IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRYAN J. VALVERDE, | Case No. C-11-2423 SC |
| Plaintiff, | ORDER GRANTING WELLS FARGO'S MOTIONS TO DISMISS AND STRIKE |
| v. | |
| WELLS FARGO BANK, N.A.; and ETS SERVICES, LLC, INC., | |
| Defendants. | |

## I. INTRODUCTION

Plaintiff Bryan J. Valverde ("Plaintiff") commenced this action against Defendants Wells Fargo Bank, N.A. ("Wells Fargo") and ETS Services, LLC ("ETS")[1] (collectively, "Defendants"), bringing twelve claims relating to unsuccessful loan modification discussions between Plaintiff and Wells Fargo and Defendants' subsequent attempts to foreclose on Plaintiff's home. ECF No. 1 ("Notice of Removal") Ex. A ("Compl."). Two fully briefed motions are before the Court -- Wells Fargo moves to dismiss and to strike portions of Plaintiff's Complaint. ECF Nos. 12 ("MTS"), 13

---

[1] Pursuant to California Civil Code § 2924l, ETS filed a declaration of non-monetary status in which it declares that it was named as a defendant in this action solely because it is the trustee under the deed of trust executed by Plaintiff. ECF No. 11. Because no objection to ETS's declaration has been served or filed, the Court finds that ETS shall not be required to participate in the action, shall not be subject to any monetary awards, and shall be bound by any court order relating to the subject deed of trust. Cal. Civ. Code § 2924l(d).

("MTD"), 17 ("MTD Opp'n"), 18 ("MTS Opp'n"), 27 ("MTD Reply"), 28 ("MTS Reply").[2] For the following reasons, the Court GRANTS Wells Fargo's motions.

## II. BACKGROUND

As it must on a Rule 12(b)(6) motion, the Court assumes the truth of the well-pleaded facts in Plaintiff's Complaint.[3] Plaintiff, a resident of Marin County, held title to a property located at 122 Marion Avenue, Mill Valley, California, 94941-2617 ("the property"). Compl. ¶ 6. On or about July 14, 2007, Plaintiff obtained a residential adjustable-rate home mortgage loan of $1,045,000 from World Savings Bank FSB ("World Savings"). Id. ¶ 9. Plaintiff alleges, and Wells Fargo concedes, that World Savings later changed its name to Wachovia Mortgage, FSB ("Wachovia"), and is now a division of Wells Fargo. Id. ¶ 2.[4]

Plaintiff alleges that in offering the loan, World Savings engaged in "predatory lending" because it knew "that housing prices were inflated above real value" and it "intended to sell-off many

---

[2] Plaintiff's MTD Opposition exceeds Civil Local Rule 7-4(b)'s page limit by several pages. After filing it, Plaintiff filed a motion seeking leave to exceed this page limit, claiming that "Plaintiff's attorney momentarily failed to consider the page limitation requirement" and ensuring the Court that such error "will not occur again." ECF No. 22. The Court GRANTS Plaintiff's Motion, and puts the parties on notice that it will not condone future violations of court rules.

[3] However, the Court does not accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice. Manzarek v. St. Paul Fire & Marine Ins. Co., 519 F.3d 1025, 1031 (9th Cir. 2008).

[4] Wells Fargo seeks judicial notice of various documents in support of these contentions. ECF No. 14 ("RJN"). The Court judicially notices the above facts, as well as the fact that Wachovia converted to Wells Fargo Bank Southwest, N.A., which then merged with and into Wells Fargo Bank, N.A.

loans that had been made to borrowers with sub-standard credit" as part of a fraudulent scheme. Id. ¶ 10. Plaintiff alleges that due to the subsequent rapid reduction in home values, he was unable to sell or refinance his home, and if World Savings had notified him that housing prices were inflated and that a housing collapse was imminent, he never would have agreed to the loan. Id.

Plaintiff claims representatives of Wachovia told him that he must be sufficiently in default for three months in order to qualify for in-house modification of his loan. Id. ¶ 26. Plaintiff ultimately defaulted on his loan. Id. Plaintiff claims that when Wells Fargo took over Wachovia, it canceled this in-house modification program. Id. Plaintiff alleges that he worked toward loan modification with Defendants[5] for more than a year "while at the same time Wells Fargo Bank was continuing with their foreclosure on their dual track approach to loan modification, always holding out the carrot of a modification at the same time having the hammer over the homeowner with a foreclosure on his property." Id. Plaintiff was told he did not qualify for the government's HAMP loan modification program because it only went up to $750,000. Id. He claims Defendants failed to process his loan modification application and instead continued to tell him that he needed to produce documentation that he had already produced. Id. He alleges that Defendants never intended to modify his loan, but led Plaintiff to believe otherwise. Id.

Plaintiff brings twelve causes of action. First, he brings a declaratory action challenging Defendants' standing to initiate foreclosure proceedings on the property. Id. ¶¶ 16-23. Second, he

---

[5] Plaintiff's Complaint attributes numerous actions to "Defendants" without identifying the specific parties by name.

3

seeks an injunction restraining Defendants from selling the property. Id. ¶ 24. Third and fourth, he claims intentional infliction of emotional distress ("IIED") and negligent infliction of emotional distress ("NIED") caused by Defendants' activity during the attempted mortgage modification and foreclosure. Id. ¶¶ 25-32. Fifth, he brings an action to quiet title to the property, alleging that Defendants have failed to establish a clear and unbroken chain of title for both the deed of trust and the promissory note. Id. ¶¶ 33-39. Sixth, he brings a claim for breach of the implied covenant of good faith and fair dealing ("good faith claim"), alleging that Defendants failed to evaluate Plaintiff's financial condition for foreclosure avoidance; advise Plaintiff of his statutory right to meet with Wells Fargo regarding such foreclosure avoidance; and advise Plaintiff of the toll-free HUD phone number regarding counseling opportunities to avoid the subject foreclosure. Id. ¶¶ 40-44. Seventh, Plaintiff brings a claim of deceit, alleging that on or about October 1, 2009, Defendants falsely told Plaintiff that Plaintiff would be placed in a loan modification program if he stopped making payments and went into default, and that until the loan review process was completed, the house would not be sold at a trustee's sale. Id. ¶¶ 45-55. Eighth, Plaintiff brings a claim for "fraud and deceit -- negligent misrepresentation." Id. ¶¶ 56-58. Ninth, Plaintiff brings a claim for promissory estoppel. Id. ¶¶ 59-64. Tenth, Plaintiff brings a claim for negligence, alleging Defendants owed Plaintiff a duty to disclose information "regarding the loan and to act in accordance with banking industry practice, statute, and regulations, and to act with respect to Plaintiff in good faith and with fair dealing."

4

Id. ¶¶ 65-68.  Eleventh, Plaintiff brings a claim under section 1798.82 of California's Civil Code, alleging "Defendants failed to timely disclose to Plaintiff the disclosure of his personal information."  Id. ¶¶ 69-71.  Twelfth, Plaintiff brings a claim under section 17200 of California's Business and Professions Code ("section 17200"), alleging that Defendants implemented and perpetrated a "fraudulent scheme of inducing Plaintiff to accept mortgages based on inflated property valuations."  Id. ¶¶ 71-98.

Defendants removed this action from state court.  See Notice of Removal.  On June 30, 2011, Plaintiff filed an ex parte motion for a temporary restraining order, seeking to restrain Defendants from selling the property at a trustee's sale scheduled to occur on July 22, 2011.  ECF No. 30.  A hearing occurred on July 7, 2011; the Court denied Plaintiff's motion and permitted the trustee's sale to go forward as scheduled.  ECF No. 34.

Wells Fargo moves to dismiss Plaintiff's Complaint.  Wells Fargo argues that Plaintiff's claims are preempted by the Home Owners' Loan Act ("HOLA"); that Plaintiff lacks standing and is judicially estopped from asserting claims due to his failure to disclose them in bankruptcy; and that all of Plaintiff's claims fail to satisfy the relevant pleading requirements.  See MTD.  Wells Fargo also moves to strike portions of Plaintiff's Complaint in which fraud is alleged on the basis that Plaintiff has failed to plead facts sufficient to support them.  See MTS.

### III. LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim."  Navarro v.

5

Block, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 129 S. Ct. at 1950 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

## IV. DISCUSSION

The allegations made in a complaint must be "sufficiently detailed to give fair notice to the opposing party of the nature of the claim so that the party may effectively defend against it." Starr v. Baca, 633 F.3d 1191, 1204 (9th Cir. 2011). As this Order explains, Plaintiff's Complaint fails to do this. Wells Fargo raises a number of compelling arguments in favor of prejudicial dismissal in its motions, but due to the vagueness of Plaintiff's Complaint, the Court cannot rule on these arguments with finality. Accordingly, and for the reasons below, the Court DISMISSES Plaintiff's Complaint. Plaintiff is granted LEAVE TO AMEND his Complaint to address the deficiencies identified below.

### A. HOLA Preemption

Wells Fargo argues that all of Plaintiff's claims are

preempted by HOLA because they are "based on the origination of Plaintiff's mortgage loan and on Wells Fargo's subsequent servicing of the loan." MTD at 5.

Congress enacted HOLA "to charter savings associations under federal law, at a time when record numbers of homes were in default and a staggering number of state-chartered savings associations were insolvent." Silvas v. E*Trade Mortg. Corp., 514 F.3d 1001, 1004 (9th Cir. 2008). HOLA gives the Office of Thrift Supervision ("OTS") "broad authority to issue regulations governing thrifts." Id. at 1005 (citing 12 U.S.C. § 1464).

OTS, in turn, has promulgated regulations stating that OTS "occupies the entire field of lending regulation for federal savings associations." 12 C.F.R. § 560.2(a) ("section 560.2"). Section 560.2 offers a framework for determining whether a state law claim is preempted by HOLA and its implementing regulations, and the Ninth Circuit has held that this framework controls. Silvas, 514 F.3d at 1005. Courts must first determine whether the state law is one of the enumerated types of laws expressly identified as preempted in section 560.2(b). Id. These include:

> (4) The terms of credit, including amortization of loans and the deferral and capitalization of interest and adjustments to the interest rate, balance, payments due, or term to maturity of the loan, including the circumstances under which a loan may be called due and payable upon the passage of time or a specified event external to the loan;
>
> . . . .
>
> (9) Disclosure and advertising, including laws requiring specific statements, information, or other content to be included in credit application forms, credit solicitations, billing statements, credit contracts, or other credit-related documents and laws requiring

7

```
                    creditors to supply copies of credit reports to
                    borrowers or applicants;

                    (10) Processing, origination, servicing, sale
                    or purchase of, or investment or participation
                    in, mortgages;
```

12 C.F.R. § 560.2(b).

If the state law is one of these enumerated types, "the analysis will end there; the law is preempted." Silvas, 514 F.3d at 1005. If not, the court should determine "whether the law affects lending." Id. If it does, the law is presumed to be preempted, subject to the exceptions provided by section 560.2(c). Id. Section 560.2(c) provides:

```
                    State laws of the following types are not
                    preempted to the extent that they only
                    incidentally affect the lending operations of
                    Federal savings associations or are otherwise
                    consistent with the purposes of [section
                    560.2(a)]:

                    (1) Contract and commercial law;

                    (2) Real property law;

                    (3) Homestead laws specified in 12 U.S.C. §
                    1462a(f);

                    (4) Tort law;

                    (5) Criminal law; and

                    (6) Any other law that OTS, upon review, finds:

                         (i) Furthers a vital state interest; and

                         (ii) Either has only an incidental effect
                         on lending operations or is not otherwise
                         contrary to the purposes expressed in
                         paragraph (a) of this section.
```

12 C.F.R. § 560.2(c). These exceptions are "to be interpreted narrowly." Silvas, 514 F.3d at 1005.

Wells Fargo argues that Plaintiff's claims are preempted under

8

section 560.2(b)(4), (b)(9), and (b)(10). MTD at 4. Wells Fargo argues that Plaintiff's chief allegations of wrongdoing -- that Defendants committed fraud, acted in bad faith, or otherwise violated the law during the loan modification discussions and the foreclosure procedure -- concern "processing" or "servicing" of the mortgage and thus compel preemption. Id.

Plaintiff argues that HOLA should not apply because only federal savings banks and associations are regulated by OTS and covered under HOLA, and while World Savings and Wachovia were federal savings banks, Wells Fargo is not. MTD Opp'n at 2-3. Wells Fargo counters that HOLA should apply because "in a merger the surviving entity succeeds to the rights of the prior entity." MTD Reply at 1. Wells Fargo cites several court orders from within this district in which HOLA was found to apply "even though the conduct at issue occurred after Wells Fargo merged with Wachovia." Haggarty v. Wells Fargo Bank, N.A., 2011 WL 445183 at *4 (N.D. Cal. Feb. 2, 2011); DeLeon v. Wells Fargo Bank, N.A., 729 F. Supp. 2d 1119, 1126 (N.D. Cal. 2010).

The Court finds that HOLA applies to this action, including Wells Fargo's servicing of the loan. However, HOLA preemption is not as broad as Wells Fargo argues it is. In Silvas, the Ninth Circuit focused not on the nature of the cause of action allegedly preempted, but rather on the "functional effect upon lending operations of maintaining the cause of action." Naulty v. GreenPoint Mortg. Funding, Inc., No. 09-1542, 2009 WL 2870620, at *4 (N.D. Cal. Sep. 3, 2009). "The question was rather whether an application of a given state law to the activities of federal savings associations would 'impose requirements' regarding the

9

various activities broadly regulated by the OTS." Id. Courts have thus interpreted Silvas to not preempt all state law causes of action arising out of loan modification and/or foreclosure proceedings, but only those that impose new requirements on the lender. E.g., Susilo v. Wells Fargo Bank, N.A., No. 11-1814, 2011 WL 2471167, at *4-6 (C.D. Cal. June 21, 2011) (denying bank's motion to dismiss borrower's breach of contract, negligence, bad faith, and fraud claims as preempted by HOLA).

To the extent that Plaintiff's claims are premised on fraud or promises made by Wells Fargo, such claims are not necessarily preempted. For instance, Plaintiff alleges that Defendants encouraged him to pursue loan modification when Defendants had no intention of agreeing to modification; such a claim is not preempted. As the Court will discuss, this allegation fails to state a viable claim. However, it also does not impose a new requirement on Wells Fargo -- the only "requirement" it imposes on Wells Fargo is that it be held responsible for the statements it makes to its borrowers. If these causes of action were preempted, federal savings associations would be free to lie to their customers with impunity. On the other hand, Plaintiff's allegations that Wells Fargo failed to use proper care or comply with industry standards essentially seek to impose new requirements on the lender, and are thus preempted by HOLA.

In light of this analysis, several of Plaintiff's claims are extremely susceptible to HOLA preemption -- namely, Plaintiff's negligence, negligent misrepresentation, NIED, and good faith claims. And given HOLA's wide preemptive effect, Plaintiff has failed to plead sufficient facts to render any of his claims

plausible. Accordingly, the Court DISMISSES all twelve of Plaintiff's claims, WITH LEAVE TO AMEND. Because Plaintiff's claims suffer from several additional flaws, the Court continues its analysis below.

### B. Judicial Estoppel

Wells Fargo alleges that Plaintiff filed for Chapter Seven bankruptcy in June 2010, and as a consequence, any cause of action Plaintiff possessed at that time is now property of the bankrupt estate and can no longer be brought by Plaintiff. MTD at 8. While Plaintiff's Complaint makes no mention of bankruptcy, Plaintiff admits that he declared bankruptcy. MTD Opp'n at 6-7. He argues that his causes of action had not yet accrued during the bankruptcy proceedings, as he was still in negotiation with Wells Fargo at that time. Id.

Wells Fargo is correct that the property of the bankruptcy estate includes the bankrupt entity's causes of action. Sierra Switchboard Co. v. Westinghouse Elec. Corp., 789 F.2d 705, 707 (9th Cir. 1986). Plaintiff's Complaint makes numerous allusions to wrongdoing on the part of World Savings in the initiation of his loan; because any claim arising from the 2007 loan origination would have accrued by the 2010 bankruptcy proceedings, Plaintiff lacks standing to bring any such claims. Plaintiff's Complaint is too vague as to Wells Fargo's alleged misrepresentations and promises for the Court to determine whether Plaintiff's claims plausibly accrued after the bankruptcy proceedings had concluded. Accordingly, Plaintiff's claims related to loan modification are DISMISSED WITH LEAVE TO AMEND for failure to plead with the required specificity.

11

### C. Claims Challenging the Foreclosure Sale

Wells Fargo argues that Plaintiff's first, second, fifth, and twelfth claims challenging the foreclosure sale fail because Plaintiff has not tendered his indebtedness to Wells Fargo. MTD at 11. Wells Fargo also argues that it need not be in possession of the original promissory note to initiate foreclosure proceedings, and so Plaintiff's declaratory relief and quiet title claims fail as a matter of law. Id. at 12.

Plaintiff admits that a tender of indebtedness is required to set aside a foreclosure, but argues that tender is not required to preemptively challenge a party's standing to foreclose on a property; Plaintiff cites no law for this novel proposition. MTD Opp'n at 12. Plaintiff also does not respond to Wells Fargo's challenges to his "failure to produce the note" theory. Id.

The Court agrees with Wells Fargo, and DISMISSES Plaintiff's first, second, fifth, and twelfth claims.[6] Because Plaintiff may cure these claims by tendering his indebtedness to Wells Fargo, the Court does so WITH LEAVE TO AMEND.

### D. NIED and IIED Claims

An NIED claim has the same elements as a claim for negligence. Lawson v. Mgmt. Activities, 69 Cal. App 4th 626, 656 (1999). Accordingly, a plaintiff asserting an NIED claim must show that the defendant owed the plaintiff a duty of care. Id. To plead a claim for IIED, Plaintiff must allege: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2)

---

[6] Furthermore, as the foreclosure sale was scheduled to occur in July 2011, the Court assumes it has already occurred, and so any challenge to Wells Fargo's standing is likely moot.

12

the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." Christensen v. Super. Ct,, 54 Cal. 3d 868, 903 (1991). Conduct is only "extreme and outrageous" when it was "so extreme as to exceed all bounds of that usually tolerated in a civilized community." Davidson v. City of Westminster, 32 Cal.3d 197, 185 (1982) (citation omitted). For emotional distress to be severe, it must be "of such substantial quantity or enduring quality that no reasonable man in a civilized society should be expected to endure it." Fletcher v. Western Nat'l Life Ins. Co., 10 Cal. App. 3d 376, 397, (Ct. App. 1970).

Wells Fargo argues that Plaintiff's NIED and IIED claims fail as a matter of law. MTD at 14. Wells Fargo argues that to state an NIED claim, Plaintiff must allege Defendants breached a duty of care owed to Plaintiff, and argues that because a financial institution "owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money," Plaintiff's NIED claim fails. Id. at 14-15 (citing Nymark v. Heart Fed. Savings & Loan, 231 Cal. App. 3d 1089, 1096 (Ct. App. 1991)). Plaintiff responds that "the bank exceeded its conventional role as money lender" by offering "comprehensive restructuring and loan modification services." MTD Opp'n at 14.

The Court agrees with Wells Fargo that Plaintiff's NIED and IIED claims are insufficiently pleaded. In rather broad strokes and with little detail, Plaintiff alleges that he suffered extreme emotional distress due to Defendants' conduct. He fails to state what about Defendants' conduct rendered it so extreme as to "exceed

13

all bounds of that usually tolerated in a civilized community." He fails to state what duty Wells Fargo owed him, and how that duty was breached. He fails to allege proper damages. However, the Court rejects Wells Fargo's arguments that these claims are barred as a matter of law.

### E. Fraud and Negligent Misrepresentation Claims

Wells Fargo challenges Plaintiff's seventh and eighth claims, as well as other portions of Plaintiff's complaint which allege fraud. MTD at 17. Claims sounding in fraud are subject to a higher pleading standard. Fed. R. Civ. P. 9(b). "To satisfy Rule 9(b), a pleading must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about [the purportedly fraudulent] statement, and why it is false." Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1055 (9th Cir. 2011) (internal quotation marks omitted). Plaintiff's Complaint obliquely refers to numerous unidentified "statements" by unidentified representatives of Defendants; he fails to sufficiently identify "what" these statements were, "when" they were made, or "who" said them. Far more detail is required than what Plaintiff supplies here. Accordingly, Plaintiff's seventh and eighth fraud claims are DISMISSED WITH LEAVE TO AMEND and Wells Fargo's MTS is GRANTED.

### F. Good Faith Claim

In California, "[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." Carma Dev. (Cal.), Inc. v. Marathon Dev. California, Inc., 2 Cal. 4th 342, 371 (1992). "In general, the covenant imposes a duty upon a party to a contract not to deprive the other

14

1  party of the benefits of the contract."  Sutherland v. Barclays
2  American/Mort. Corp., 53 Cal. App. 4th 299, 314 (Ct. App. 1997).
3       Wells Fargo alleges that Plaintiff's good faith claim "is in
4  actuality a claim that Wells Fargo breached Civil Code § 2923.5."
5  MTD at 20.  Wells Fargo argues that section 2923.5 is preempted by
6  HOLA.  Id.  Wells Fargo also argues that "one of the elements of a
7  breach of the covenant claim is that the plaintiff did all, or
8  substantially all, of the significant things the contract
9  required," and because Plaintiff admits that he defaulted on the
10 loan, his claim fails.  Id.
11      California's Civil Code provides a framework for non-judicial
12 foreclosure: the lender must first record a notice of default; once
13 three months have elapsed, the lender must give notice of the
14 planned foreclosure sale.  Cal. Civ. Code § 2924.  Within this
15 framework, section 2923.5 concerns the notice of default.  It
16 requires the "mortgagee, trustee, beneficiary, or authorized agent"
17 seeking to file a notice of default to first contact the borrower
18 in person or by telephone "in order to assess the borrower's
19 financial situation and explore options for the borrower to avoid
20 foreclosure."  Cal. Civ. Code § 2923.5(a)(2).  The notice of
21 default may not be filed until thirty days after this initial
22 contact or the statute's due diligence requirements are satisfied.
23 Id. § 2923.5(a)(1).  During this initial contact, the party seeking
24 to file a notice of default must advise the borrower that he or she
25 has the right to request a subsequent meeting and, if requested,
26 schedule the meeting within fourteen days.  Id. § 2923.5(a)(2).
27      The California Court of Appeal has narrowly interpreted
28 section 2923.5 "as to avoid having the state law invalidated by

15

federal preemption." Mabry v. Super. Ct., 185 Cal. App. 4th 208, 231 (Ct. App. 2010). The rights provided to borrowers under section 2923.5 are purely procedural -- there is no "right" to a loan modification. Id. The lender's obligations under section 2923.5 to "assess" the borrower's financial situation and "explore" options to avoid foreclosure can be satisfied by simply asking the borrower "why can't you make your payments?" and "telling the borrower the traditional ways that foreclosure can be avoided (e.g., deeds 'in lieu,' workouts, or short sales)." Id. at 232. The statute does not place a duty on the lender "to become a loan counselor itself." Id. at 219. The only remedy section 2923.5 offers is the postponement of a foreclosure sale until the lender comes into compliance with the statute. Mabry, 185 Cal. App. 4th at 213.

To the extent Plaintiff's bad faith claim is merely a claim of violation of section 2923.5, this claim is likely moot given the scheduled July 2011 foreclosure sale of the house, as the only remedy available under section 2923.5 -- postponement of the foreclosure sale -- would be no longer available. To the extent Plaintiff attempts to premise a separate good faith claim for damages on Wells Fargo's alleged failure to satisfy section 2923.5, such a claim is preempted under Mabry's analysis.

Because Plaintiff has failed to identify the contract at issue and the benefits deprived by Defendants, he has failed to plead this claim with the required specificity. However, the Court rejects Wells Fargo's argument that Plaintiff's failure to make payments under the note relieved Defendants of their duty to act in good faith in performing under the note and in enforcing it. As

16

1  such, Plaintiff may be able to plead a claim based on Defendants'
2  conduct as a party to the deed of trust. Because Plaintiff has not
3  pleaded sufficient facts, the Court DISMISSES, WITH LEAVE TO AMEND,
4  Plaintiff's claim.

### G.   Promissory Estoppel Claim

The elements of a claim for promissory estoppel are: "(1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3)[the] reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance." Aceves v. U.S. Bank, N.A., 192 Cal. App. 4th 218, 225 (Ct. App. 2011).

Wells Fargo argues that Plaintiff's Complaint does not allege a clear and unambiguous promise upon which Plaintiff reasonably relied to his detriment. MTD at 21. Wells Fargo alleges that Plaintiff's assertion that Wells Fargo told Plaintiff to stop making mortgage payments in order to qualify for a loan modification is "implausible on its face." Id. It also alleges that Plaintiff's claim that his decision to default on the mortgage ruined his credit is implausible.

While the Court agrees with Wells Fargo that Plaintiff has failed to identify a "clear and unambiguous promise," it does not agree that Plaintiff's allegations are implausible on their face.[7] Plaintiff's Complaint alleges that representatives of Wachovia told him that he must be sufficiently in default for three months in order to qualify for in-house modification of his loan. Compl. ¶

---

[7] Wells Fargo seeks judicial notice of several filings in Plaintiff's bankruptcy proceeding in support of the factual argument that Plaintiff's indebtedness to Wells Fargo was dwarfed by his indebtedness to other creditors. The Court DECLINES this request.

17

26. He does not allege that these representatives promised him that he would qualify for the loan if he was sufficiently in default; he merely alleges that he would not qualify for in-house modification if he were not considerably in default. This pleading is not sufficient to support a promissory estoppel claim. Plaintiff must include considerably more detail in order to render this claim plausible. Furthermore, Plaintiff must establish that his cause of action is not duplicative of a claim for breach of contract, as "tort recovery for breach of the covenant is available only in limited circumstances, generally involving a special relationship between the contracting parties." Bionghi v. Met. Water Dist., 70 Cal. App. 4th 1358, 1370 (Ct. App. 1999). Plaintiff alleges no special relationship here.

### H. California Civil Code § 1798.82 Claim

In extremely brief language, Plaintiff claims Wells Fargo violated California Civil Code § 1798.82 by failing "to timely disclose to Plaintiff the disclosure of his personal information." Compl. ¶ 70. Wells Fargo calls this claim "as vague as can be." MTD at 23. The Court agrees. Nowhere in Plaintiff's twenty-five-page Complaint is there even a fleeting reference to facts that could support this claim. No "personal information" is discussed, much less improper disclosure of it. The Court therefore DISMISSES this claim.

### I. Section 17200 Claim

Wells Fargo argues that Plaintiff's section 17200 claim -- which is premised on Plaintiff's first eleven claims -- is not pleaded with the requisite particularity. MTD at 23-24. In particular, Wells Fargo contends that Plaintiff "lumps all

18

defendants together without identifying which defendant committed which alleged violation," and the claim "is defective to the same extent that its underlying claims are defective." Id. The Court agrees. The Complaint fails to state a single viable claim, and as such, the derivative section 17200 claim fails as well.

In sum, Plaintiff's Complaint falls far short of federal pleading standards. While Plaintiff is granted leave to amend his complaint to address the above shortcomings, he is put on notice that any claims dismissed on a subsequent motion to dismiss will be dismissed WITHOUT LEAVE TO AMEND. The Court will only grant additional leave to amend if Plaintiff files a motion under Rule 15(a)(2) of the Federal Rules of Civil Procedure establishing that justice requires it.

Furthermore, the Court puts Plaintiff and his attorney on notice that under 28 U.S.C. § 1927, "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." The Court may impose such sanctions sua sponte. Pacific Harbor Capital, Inc. v. Carnival Air Lines, Inc., 210 F.3d 1112, 1118 (9th Cir. 2000). If Plaintiff makes any frivolous arguments in his amended complaint or pleads any clearly meritless claims, he and his counsel may be subject to sanctions under 28 U.S.C. § 1927, Federal Rule of Civil Procedure 11, the Court's local rules, and the Court's inherent power.

///
///
///

**V. CONCLUSION**

For the foregoing reasons, the Court GRANTS the motion to dismiss and the motion to strike filed by Defendant Wells Fargo Bank, N.A. Plaintiff Bryan J. Valverde's Complaint is DISMISSED, WITH LEAVE TO AMEND. Plaintiff is granted thirty (30) days' leave to file an amended complaint. If Plaintiff fails to file an amended complaint within this time frame, this action will be dismissed WITH PREJUDICE.

IT IS SO ORDERED.

Dated: August 25, 2011

UNITED STATES DISTRICT JUDGE